We'll hear argument first this morning in Case 12-1184, Octane Fitness v. Icon Health & Fitness, Incorporated. Mr. Telscher. Mr. Chief Justice, and may it please the Court, an exceptional case under Section 285 requires a court to assess the full range of traditional equitable considerations, including the degree of reasonableness of the merits by the plaintiff's action, procedural aspects of the case, and evidence of economic coercion. Frivolous and bad-faith cases are not prerequisites to an award of fees under Section 285. The Federal Circuit's test conflicts with the statutory language, it violates established canons of statutory construction, and it deprives district courts of the discretion they need to effectively combat abusive patent litigation practices. Below, the Federal Circuit found that Icon's claims require a C-channel structure and that Icon's claim construction, to the contrary, was without merit, Appendix at A-10. The Federal Circuit also affirmed the district court's grant of summary judgment that no reasonable juror could find as a matter of law that Octane's structure had an equivalent to the C-channel, Appendix A-13. This means that Icon's infringement allegations against Octane were meritless. This fact, in combination with other undisputed evidence of record, namely the worthless nature of the patent, evidence of economic coercion, and the fact that two other elements of the claimed the core elements of the claim were missing as well, make this case exceptional. And it's such that this Court should reverse the district court and award fees on its own. Kennedy, you were talking about economic coercion. Suppose it were reversed. Suppose that Octane had the patent and sued Icon. Would the analysis be precisely the same? The analysis would be primarily the same. The evidence of economic coercion may be less. So, for example, if you're a smaller competitor and you're suing a larger competitor, there would be less opportunity for abuse. Knowing if Icon was the competitor with the weak patent, they would know that their larger competitor would stand up to them, so the opportunity for economic abuse would be less. Kennedy, I've been listening to your adjectives. This is a search for adjectives in part. I think you used the word meritless. Is there a difference between meritlessness and objectively baseless? I don't know that the case law is perfectly clear. In Christiansburg, this Court did define meritless to the tune of it's unjustified and without foundation. Kennedy, because if we remand to the district court, the district court's already said it's not objectively baseless, it's not brought in bad faith. I'm not quite sure what words we're going to give to the district court if you're to prevail. Ginsburg, you had just said that we should return it to the district court with orders to require fee shifting. And how could that be if this question is to be exercised by the district court? I can understand you're asking for a remand. I can't understand you're asking for a reversal and an order that fees be reimbursed. We understand the tension between a discussionary standard and asking for a remand with a finding. However, there are cases that are rare, not that rare, but they're rare enough where appellate courts look at a record and have a firm and definite conviction that an award should be made such that it would be an abuse of discretion. Ginsburg, do you think this Court is the proper court to look at the record and make that determination? The district court got it wrong when the district court didn't think this was an exceptional case. On this record, yes, Your Honor. The Federal Circuit's finding is such that the infringement claim is meritless. As a matter of law, the claim construction position had no possibility of success under 35 U.S.C. section 112 paragraph F. Scalia, what do you want to add to meritless? Don't you have to add something to meritless? I mean, every time you win the summary judgment motion, that's a determination that the claim is without merit, isn't it? It is not, Your Honor. Doesn't meritless just mean without merit? No. For example, in most patent cases, there is the markman phase. So a district court judge, as a matter of law, is required to find on the claim construction. So there could be a reasonable dispute about the meaning of a term that's resolved against the plaintiff. So it just because they lose a claim construction doesn't mean their position was meritless. Okay, I understand. All right. What must be added to the word meritless? In our strong view. No reasonable judge could have found it to be with merit? If someone brings a claim construction position that's unreasonably weak, in our view, that qualifies under section 285 and is consistent with the words that other cases have used. That's not a standard. I would want to, you know, you realize how differently various district courts would operate if you just say, what was your phrase, unreasonably weak? You've got to give me something tighter than that. That is the standard, however, that this Court used in Martin and in Pierce. And if we're looking at, if we want to make, so for example, in most of these cases what we're talking about is going to typically involve the merits. And so if we say that the only way you can get a fee award is to have a zero merit frivolous case, it's impossible to show, it's inconsistent with the statutory language. So when we're looking at this from a statutory context, on the merits, what should qualify? And there comes a point at which a case goes from strong to medium and it crosses into the territory of weak. It gets weaker and weaker, and then it becomes frivolous. This Court, even in Pierce, recognized that the reasonableness standard was something more than frivolous. And we think if section 285 is to have any teeth in deterring the abusive practices currently in the system, something more than frivolousness is required and it is consistent with this Court's prior precedent. Roberts We're dealing with the term that could be read in many different ways, exceptional, right? Maybe that means 1 out of 100, maybe it means 10 out of 100. And why shouldn't we give some deference to the decision of the court that was set up to develop patent law in a uniform way? They have a much better idea than we do about the consequences of these fee awards in particular cases. And since we're just, as Justice Kennedy pointed out, dealing with adjectives, you know, meritless, frivolous, exceptional, why don't we give some deference to their judgment? Well, I think we need to look at the basis of the judgment, which is grounded in the fact that they found constitutionally that the PRE standard was required. And I think this Court's precedent in B, E, and K just two years earlier says that the validity of fee-shifting statutes is not governed by the PRE standard. And if the Court were to so hold, that would throw into question all of the fee statutes of this country, because accordingly, they presumptively would have to have the sham litigation test to be constitutional. Sotomayor, what is the difference between the Federal Circuit's use of objective reasonable or objectively meritless and your standard? I know that you've been arguing that they shouldn't be using subjective intent so I'm putting that aside. And you can tell me why Kilopass doesn't answer that now, but what's the difference you see? To my way of thinking, when you say meritless or baseless, it means there's absolutely no foundation. It's zero merit. When we talk about objectively unreasonable, and again, as this Court found in Pierce, it suggests something lesser than frivolousness. And the reality of, I think, of district court litigation is it's near impossible to show that something's frivolous, that somebody had no argument. I don't understand your answer to the question. How does the first part of the Federal Circuit's test differ from your perception of what meritless means? We understand the first part of the Federal Circuit's test requires zero merit or frivolousness, which is what the district court, she used interchangeably objectively baseless and frivolousness. So we think frivolousness is too low of a standard under 285. Kennedy, would you say without substantial merit? I mean, if we're playing around with words again. Without substantial merit, unreasonably weak or low likelihood of success, I think those are all ways of getting to the same point, which is something less than zero merit will satisfy under 285. You have several objections, I take it, to what the Federal Circuit has said. One is that you think objectively baseless is too low. Correct? Yes. You also don't think bad faith is necessary. Agreed. And do you also believe that litigation misconduct taken in conjunction with a case that is, let's say, of little merit, but perhaps not as low as the standard that you have, that you're suggesting would justify an award of fees? Yes. We believe litigation misconduct, especially in consideration with the weak case on the basis of merit, makes for strong connection or exception. Now, let's say I'm a district judge someplace and I rarely get a patent case. How am I supposed to determine whether the case is exceptional if the standard is take everything into account, litigation misconduct, the strength of the case, any indication of bad faith, and decide whether it's exceptional? Exceptional compared to what? I have very little basis for comparison. How do I do that? So I do not think it's a numerical comparison. I think when we're talking about an uncommon case, it's what would we expect of a reasonable litigant. So in the normal course, a plaintiff develops a product, they bring it to market, they get a patent, they're successful. A defendant recognizes the success, they look at the patent and they try to design around, and a reasonable dispute ensues. So that's a normal case. What we're saying to a district court judge, the guidance we would give them is that this litigant, this plaintiff, acted in unreasonable ways, and district court judges are called on every single day to make those determinations. Compared to what? Compared to the types of cases that the district court hears on a more regular basis? Or compared to patent cases? I think all cases. Complex litigation requires litigants to act reasonably in procedural aspects and on the merits. I think this is what I find somewhat troubling about your take everything into account standard. Most district judges do not see a lot of patent cases. And when they see one, it's very unusual. So you've got these patent attorneys showing up in court. They're different from other attorneys. Sometimes they do. They, particularly if it's a very technical case, they speak a different language, they do things differently. The district judge is struggling to figure out how to handle the case. And then the one party wins, the other party loses, and the party that wins says, this was an exceptional case and you should award fees in my favor under 285. And the district judge says, how can I tell whether this is exceptional? If I had 25 patent cases, I could make some comparisons, but I don't have a basis for doing that. Now, the Federal Circuit has a basis for doing it. Well, first of all, Congress has spoken and said that in exceptional cases, the district court should do this. And I also, I think if you went back 10 to 15 years ago, perhaps the notion that district court judges haven't seen a lot of patent cases might be true. District court judges see lots and lots of patent cases. Many of those cases may not be decided on the merits. The only thing that the Federal Circuit sees are the ones that went to final conclusion. So I do think district court judges see a lot of patent litigation. I also think that's true. Is that really true? There are nearly 700 district judges in the country. If we had a statistic about the average number of patent cases that a district judge hears and receives on, let's say, a 5-year period, what would it be? I don't know what that number is, Your Honor. But I know that district court judges carry a widely varying docket of different areas of law and are called upon to learn the law and assess the reasonableness of those positions. Scalia. Mr. Kelsher, it occurs to me that you really cannot answer the question of what adjectives should be attached to meritless. And the reason you can't is since it is a totality of the circumstances test, that is only one factor, and it doesn't have to be an absolute degree of meritlessness even in a, I assume you would say, that even in a very close case, if there has been outrageous litigation abuse by the other side, the court would be able to say, my goodness, I've never seen lawyers behave like this. You're going to pay the attorney's fees for the other side. Couldn't the Court do that? That's absolutely correct, Your Honor. So then how can we possibly define meritless? We can't, because it goes up and down. Even in a case where it's a close case, it could still be exception. It's the degree of the unreasonable nature of the case as one factor. Well, do you agree with the Solicitor General's test that fees are authorized when they're, I'm quoting, "...necessary to prevent gross injustice"? Yes, we do, Your Honor. Well, I was surprised at that, because I would have thought your friend on the other side would say that. I mean, gross injustice sounds like a very tiny portion of cases, lower than meritless. I mean, injustice is bad, too. It doesn't mean you've just lost, but there's something very unjust about it. Gross injustice, well, it's just some more adjectives. And it's the test, I gather, that's the test you adopt. Well, it's certainly what Congress said in the legislative history and what was adopted by the courts. Well, but you've been up here for several minutes and you haven't even used those particular adjectives, that adjective, which is your test. Section 285 is remedial, so certainly in order to remedy something, there must be some level of injustice. I think consistent with the notion that a case is exceptional and uncommon is the notion that it's gross injustice, not justice. And to my way of thinking, when somebody brings a very weak case, which we believe this one was, and it costs someone $2 million to defend it, and they go through that and they pay that price tag, a district court should be able to find that that is gross injustice. And I think it is, especially for many of the small businesses in this country when they face these types of suits. Kagan Mr. Tosher, can I just ask very quickly the factors that you would think a court should consider? One is the degree to which the case is meritless. Another, I presume, is bad faith. Another is litigation misconduct. Is there anything else, or are those the three? Tosher No, there's more. I think it's — there's no exhaustive list, and for example, even in this case. And in Parkin Theaters, where the Court set other equitable considerations, we believe it is a totality of the circumstances. Anything that bears on the gross injustice and the uncommon nature of the case. So, for example, in this case, the fact that Icahn brought a patent that it, with all of its resources, couldn't commercialize, was indisputably worthless.  That's a factor that bears on the equities of this case and the uncommon nature and is one that doesn't fall neatly within those categories. The fact that our client licensed under a different patent that shows its linkage is another factor that shows that what they're asserting isn't reasonable. So I don't think there is a laundry list, but the categories that you identified are the big ones. Ginsburg I think you did say, if it's an exceptional case, the district court must award forgiveness, but the statute says may. So even in an exceptional case, according to the statute, the district court is not required to award forgiveness. Or do you read may differently than anything else? Tosher Certainly, there has been the issue of whether this determination is a one- or two-step finding. My belief is that district courts will look at all of the factors and make up their mind whether it's exceptional in that same-step award fees. There has been the notion that first we determine a case is exceptional and then we make the determination of whether fees should be granted. I'm not sure once a court determines that a case is exceptional what other factor would bear on that determination. If there are no other questions, I'd like to reserve the rest of my time for rebuttal. Roberts Thank you, counsel. Mr. Martinez. Martinez Mr. Chief Justice, and may it please the Court. Section 285 grants district courts discretionary authority to look at the totality of the circumstances and award fees when necessary to prevent gross injustice. Such awards can be proper in unusual cases where the losing party has committed bad faith or harassing conduct during the litigation or has advanced objectively unreasonable legal arguments, just as courts had held under the 1946 statute. The Court should restore this understanding of Section 285 and make four additional points that we think will clarify the inquiry for the district courts. First and most importantly, the Court should say that baselessness and bad faith do not both have to be present in a case in order to justify a fee award. Second, the Court should say that district courts can grant fees based on a combination of different factors, even if no single factor would necessarily support the award on its own. Third, the Court should say that an objectively unreasonable argument can trigger a fee award, even if that argument is not so unreasonable that it's actually considered frivolous. And fourth, the Court should say that clear and convincing evidence is not required. I'd like to turn to Justice Scalia's question and the discussion that occurred earlier about the battle of the adjectives, so to speak. We think that, as I said earlier, that the fee award should be appropriate or can be appropriate in a case in which there's an objectively unreasonable litigating position or objectively unreasonable arguments that are made in a case. We appreciate that that's not a 100 percent precise, bright-line test, but we think it's similar to and it's in fact the same as what the Court has said in other contexts such as EJA in the Pierce case. Scalia No matter what other factors exist, it has to be objectively unreasonable. I mean, even if it is clear from other factors that this is a shakedown, a big country or a big company trying to suppress a little company, even if it's clear that there has been outrageous litigation abuse, misconduct by attorneys, all of those things cannot justify shifting the award unless it is objectively unreasonable. Martinez No, Justice Scalia, that's not our position. Our position is if the only factor is an objectively unreasonable argument, that in appropriate circumstances that can be sufficient. We believe very, very strongly that if there are other factors present, that would only strengthen the case for a few minutes. Breyer I see that. But look, what you listed in your brief on page 17, which I think was non-exclusive, willful infringement, litigation misconduct, inequitable conduct by the patentee in securing the patent, vexatious or unjustified litigation, bad faith, the assertion of frivolous claims and defenses. And then you cite cases which say all of those in different instances have been sufficient either alone or together. Well, why don't we just copy that? Isn't that your view?  I think our view is that those are the kinds of circumstances.  All right. Do you want to add to that list or subtract? I think as long as the Court makes clear that that is an illustrative list that I think captures the kind of bad faith. Scalia I want to add et cetera, right? And add or similar, similar equitable, similar inequitable conduct, which is what the Ninth Circuit said in the Parkin Theaters case, which I think all the parties agree fairly captures what Congress intended to incorporate from the cases decided in the late 40s. So where does gross injustice come from? I understood that to be your test. You say fees are authorized when necessary to prevent gross injustice to the defendant. And again, you have your long laundry list that doesn't say anything about gross injustice. Well, I think the long laundry list reflects the kinds of circumstances in which courts operating between 1946 and 1952, interpreting the prior statute, those are the circumstances in which those courts had concluded that there was a gross injustice. And so in other words, we think gross injustice is maybe the umbrella term. You don't think it. Where it comes from, which maybe you don't want to say, is the Senate report on the 1946. Now, still, there are some of us who think that's a highly relevant consideration. We are comfortable saying that, and we do say that, and we think it's especially salient and worth relying on here, not just because it's the legislative history, but also because that same legislative history and that same gross injustice language was repeatedly cited and talked about in the 1946 to 1952 cases. And I think that's what the Chief Justice is driving at, is there's a bit of a disconnect between your list of factors and those two words. Gross injustice, I mean, that's kind of – that's really, really exceptional. That sounds like shocks the conscience. That sounds like something you've never seen happen in the litigation system ever. But then you're saying essentially ratchet it down when you list all these various factors, and maybe that's right. We shouldn't be obsessed with this word gross injustice. It just seems a disconnect between the two words and all the factors. Let me explain by stepping back. But it's in the Senate report, so. Justice Kagan, we think that the way to look at this statute is to try to figure out what Congress understood the statute to mean in 1952. And it's very clear, and I think both sides agree, that Congress intended to essentially incorporate the thrust of the judicial opinions that had been issued under the 1946 statute. Those opinions repeatedly talked about gross injustice, drawing from the prior legislative history, and when they awarded fees and when they discussed when fees would be appropriate, the circumstances that we list in our brief are what they said would equate to gross injustice. So I think in the abstract you may be right that gross injustice is a broader standard, or maybe it's a little bit – it's, you know, only the most exceptional of exceptional cases would be covered. But in practice, what Congress was looking at and what they were responding to and what they were intending to put in this statute was an idea of gross injustice that reflected those bad faith, harassing, and unreasonable situations. Scalia, if that's what you mean, why don't you say exceptional injustice instead of gross injustice? We are trying to tie the interpretation of the statute to the language that we're saying. To the Senate report. Not just to the Senate report, Justice Scalia, but to the judicial decisions. And this Court has often looked to judicial decisions as a backdrop against which Congress legislates. Kennedy, if the difference statute, could we borrow from it? You mentioned EJ. I take that's substantially justified? Yes, Your Honor. We think that that the difference statute was passed later, all those problems. We think that when the situation involves, say, just an objectively unreasonable argument, we think that essentially the same test would apply from the EJ context. Sotomayor, so is there anything other than the objectively baseless and bad faith of the Brooks furniture test that you would change? Doesn't all of the other factors that the Court uses, litigation misconduct, all of that other stuff, encompass all the factors you're talking about? I think it does, but I think it's very important if the Court were to go in that direction, as long as it elaborates a couple of the additional points that I mentioned earlier. That it has to be a combination, a combination of factors, and. Yeah, right. That both are not required, that it can be a combination of factors, that when the Brooks furniture test says unjustified, that is a, that embraces the concept of objective unreasonable. I thought the Federal Circuit said that you only use the objective unreasonable if there isn't one of the other things. So it seems to be saying that it. I think they do, but I think that catch-all category in which they apply the two-prong Brooks furniture test covers potentially a very wide array of cases, because it covers any case in which perhaps there's bad faith conduct in bringing the litigation, and also it covers the range of circumstances in which frivolous or unreasonable arguments are made. And could you spend a moment on clear and convincing, and because there's not a whole lot in your briefs on that part of it, although you do mention it in passing. Right. Yes, Justice Sotomayor. As the Court well knows, the standard rule in civil litigation is that facts need to be established by a preponderance of the evidence unless Congress says otherwise. The I-4-I case decided a few terms ago, I think, confirmed that general view. Here, Congress did not say otherwise. Congress did not embrace a clear and convincing standard. There's nothing in the text or the history of Section 285 that suggests that it did. I appreciate we didn't have enough as — I wish we had had more time in our brief to get into this issue, but I would just suggest that if the Court wants to look more deeply, it can look at Judge O'Malley's opinion in the Kelo Pass case, which I think has a very thorough and very convincing discussion of the clear and convincing evidence issue. Alito, when we're dealing with just that, a case that raises a weak legal argument. And that's different from objectively baseless. That's a little higher than objectively baseless. It's not clear, Justice Alito, how the Federal Circuit conceives of it. And let me just explain why. I think they use the term objectively baseless. In some of their opinions, when they're talking about that term, they seem to use frivolous as a synonym. In other cases, when they're talking about that term, they seem to use objectively unreasonable. And so we think there's a little bit of confusion. We think the Pierce case makes very clear that justified and reasonableness are the same thing and that a reasonable argument is not the same as merely a non-frivolous argument. Alito, and that's higher than the Rule 11 standard? The Rule 11 standard, when it comes to unreasonable arguments, is frivolous. And so we think that it should be a little bit lower than that standard and it should be closer to something like an EJIA. The — I would like to get to the Chief Justice's question earlier about why not defer to the Federal Circuit's view on this statute. And I think two principal reasons. First of all, I don't think the Federal Circuit's view really has any basis in either the text or the history of the — of the Section 285. So that's reason number one. Reason number two is I think if the Federal Circuit had had a consistent view over its history or if the Federal Circuit were not internally divided on this issue, that may be a consideration. Deference might be more appropriate, but here there is no consistent history and the Federal Circuit, as we've seen in Kilopass, is divided. Thank you, counsel. Mr. Phillips. Thank you, Mr. Chief Justice, and may it please the Court. I'd like to start with the objective baseless issue in this particular case, because it seems to me the district court has done a very thorough job of analyzing every element of this case. The district judge obviously presided over the entirety of this litigation, analyzed the case for purposes of summary judgment, and then reanalyzed the case for purposes of analyzing the merits of the claim and whether or not this would be an exceptional case. To be sure, it applied the Brooks standard, but basically what it analyzed was just simply whether there was an objectively legitimate basis for the decision. It's not that it has zero merit. Counsel keeps saying zero merit is objectively baseless. That's not the standard. This Court held in PRE that objectively baseless means that there has to be probable cause, that it lacks probable cause to go forward, that it has to be reasonably possible. Well, in PRE, of course, we were concerned about infringing on First Amendment rights, and that's not the case here. Well, I think you could argue that there is at least a First Amendment concern that's in here, but in any event, what I'd seem to be really concerned about is access  Well, access to the courts. Access to the courts. Because any time you talk about imposing multimillion-dollar fee awards at the end of the litigation, particularly if you do it on a fairly arbitrary basis. Do you think Congress could not require the loser to pay in all cases? Well, I'm not sure about in all cases. I mean, if it can do that, there's surely no First Amendment problem. Well, I'm not sure I'd concede that in all cases. I do think in the run-of-the-mill cases. But when you're talking about a situation where the assertion is that the conduct of the litigation, the bringing of the litigation, itself is a rule. That's the English rule. It used to be our rule. I don't see how you can possibly say that it's unconstitutional to make the loser pay. This is not your best argument, is it? It is not my best argument. I appreciate that, Justice Kennedy. On the other hand, if you go back and look at Christiansburg, in that case the Court also didn't treat it as a First Amendment issue, but it still recognizes an important policy of trying not to have too much interference with access to the courts. In any event, objectively baseless is a standard that every court knows how to use, and it goes directly to the ultimate. Sotomayor, how different is this from sanctionable misconduct? It seems to me that under the way you're articulating things, the conduct has to be sanctionable before you can give attorneys fees under this provision. So why bother having the provision? Well, because the provision was enacted in 1952, Justice Sotomayor, long before this kind of litigation, these kind of rules that would have rendered the litigation sanctionable existed. And so as a consequence of that, and I think it's important to put it in context, because, you know, when Congress did this initially in 1946, to be sure it's the Senate report that talks about gross injustice, but it is the decisions of the courts that adopted that approach of gross injustice. And then when Congress in 1952 incorporates the exceptional case standard, the reviser's notes say it's designed to go back to the legislative history and the decisions that have been interpreted. Breyer, why does it always have to be objectively baseless? I mean, I've read enough cases in this area to be able to approach it as a district court judge who's not expert. I patent the following. For a computer, enter somebody's name, ask phone number, and they'll give you the phone number if you put it in the right city. That puts some lists in the computer. They can patent that? Well, you add a couple of things, and they apparently, you're going to have an argument that they can patent it, okay? Because it will be very abstract language, it will be able to patent almost anything. No, you can't finally, but objectively baseless, the patent attorneys are very brilliant. And figuring out just how to do this. So we're never going to have attorneys' fees in a suit if that's your standard. Well, but you could couple that with just barely over the line. What line? This vague line no one knows what it is. In addition, all they did was say, we don't want to go to court and cost you $2 million. Please send us a check for 1,000, we'll license it for you. They do that to 40,000 people, and when somebody challenges it and goes to court, it costs them about $2 million because of every discovery in sight, okay? You see where I'm going? Yes. And so I do not see why you couldn't have an exceptional case where attorneys' fees should be shifted, but if I'm honest about it, I cannot say it's objectively baseless. I can just say it's pretty close to whatever that line is, which I can't describe, and look at all this other stuff. Are you going to say that I can't shift? I think the problem with the approach you proposed there, Justice Breyer, is you're trying to deal with a very small slice of the problem of litigation. You know, what you've described. No, no, but I'm of course it may be a small slice of litigation, but it is a slice that costs a lot of people a lot of money. But the problem is. And so I would like to know if I do run across that small slice, why cannot I, the district judge, say I've seen all these things? Taken together, they spell serious injustice. And therefore, I'm shifting the fees. Okay? Why can I not do that, even though, as I just said and repeat, I cannot in honesty say it's frivolous given the standards for patenting that seem to be administered? Because when Congress enacted the statute, adopted the exceptional case standard, it meant essentially to require that the litigation be unjustified and vexatious. Unjustified means that it is baseless. That's the understanding that existed all along. It has to have – it's not that it has zero merit, but it has to have enough merit to be – to satisfy the standards of probable cause. Kennedy, this is a case that involves a straight stroke rail that at one end goes in an elliptical arc, and the district judge has to figure this out with all the effort. After he goes through all the underbrush, he finds there's nothing there. And it's hard to say that that's objectively baseless to a district judge who spent weeks studying this thing, but at the end of the day, suppose he finds there's nothing there. Well, if at the end of the day there's nothing there, then I think it is objectively baseless, even though they've gone through the litigation. But what the district judge did – There's not nothing there. It's highly abstract language. I gather you, like I, have read some of these claims. They're very hard to understand. And when you get to the bottom of it, the abstract nature of the language, plus the fact that it has something to do with computer input, plus the fact that, you know, you suspect very strongly it's baseless, but you really don't like to say something that isn't true, and you can say, well, I could see how somebody might think there was something to this claim just in that tone of voice, which you can't write down that tone of voice. You see? It usually comes through in the opinions afterwards. Breyer, you know, the case you have in front of you, though, is not a case like that. Well, let's send it back and tell them that they were imposing a standard that was too narrow, that was – didn't take count of all the circumstances where something could be unusually unjust, and then let them – no clear and convincing, but it's up to you, district judge.  You decide what's up. Can I say two things about that? First of all, the clear and convincing evidence issue is not in the case. It wasn't – they didn't seek certiorari on that issue. You know, if the Court wants to do it. If the Court is dealing with the Federal Circuit's test and it's got these two things, baseless and subjectively, and clear and convincing evidence, I think to leave out that piece of it, when it all comes out of that one paragraph in the Brooks Furniture case, so I think once the case is before us, if we leave out that one piece. I don't – well, Justice Ginsburg, I do not believe that the clear and convincing evidence standard is fairly subsumed within the question of whether or not the objective baselessness standard ought to be applied any more than the second case you're going to hear today is subsumed by this case. Those – I mean, they all come out of the Federal Circuit, but it seems to me you ought to hear – you ought to grant separately on the question of the standard of review or the standard of proof at the appropriate time. Ginsburg, why don't we just take – there's another statute, as you know, has identical wording, the Lanham Act, and that says exceptional means not one of the mind, uncommon. And then there's a nice illustration, a case from the D.C. Circuit. Phillips, I've read that opinion. Why don't we say, well, we have it there in the Lanham Act, same words? Right. But there are a couple reasons for that. One is, obviously, this statute was passed long before the Lanham Act was enacted and against a very different backdrop. And Congress clearly, in literally sticking its toe in the water of allowing prevailing defendants to get fees from plaintiffs in a situation that is pretty unprecedented at that point in time, set the standard very high and intended for it to prevent gross injustice. The legislative history of the Lanham Act, which this Court apparently was willing to read for those purposes at that time, doesn't remotely suggest that. And the Court didn't take into account, in that opinion, the standards under the Patent Act in interpreting the Lanham Act. So it seems to me you could make the argument the opposite way, which is that the Lanham Act ought to be interpreted the way I propose. Ginsburg-Miller And the text is identical in both, in the legislative history. Some people like it, some people don't. But the text is identical. So I think it would be odd to construe the very same words in the context of the Lanham Act one way and a different way in the context of the Patent Act. Phillips Two answers to that. One is, you know, if you want to interpret them in tandem, I would say you should interpret the Patent Act in the strict way that Congress intended it to be interpreted in 1952, and the Lanham Act should follow that. The alternative is there is a different history. Patent litigation and trademark litigation are very, very different in the impact that they have. And as a consequence, it seems to me you could, in fact, say that Congress didn't intend that. But, you know, that seems to me in some ways the tail wagging the dog, and that's a mistake. Kagan Mr. Phillips, please. Phillips One thing I do want to say, Justice Breyer, in response to your argument about why don't you leave it for the district court in that circumstance. The problem is, is what you're saying to plaintiffs who bring patent litigation with, in this case, counsel's advice and experts' advice, they got the machines, they did everything you'd want a litigant to do before bringing a litigation, they handled the case, they spend more money on legal fees as the plaintiff than the defendants did in this case, they have to hire an expert, they put in play the validity of their patent. There are lots of disincentives for plaintiffs to bring in this case, and at the end of the process, based on a completely indeterminate standard, the district court would then retain authority to say, I conclude that what you did here is unreasonable. Breyer That's true, but you could then appeal. I mean, you're making an argument on the merits there, and really the question is, is who's better suited to figure out whether this is a really special case. And if, you know, of course you're right. Plaintiffs are often right in these things, and sometimes they're wrong. So it costs everybody a lot of money. So you go to the Federal Circuit and ask them to review it for an abuse of discretion. Scalia, Mr. Phillips, their lawyers might well have given them different advice if they didn't know that, hey, nothing to lose given the test that the Federal Circuit has, you know? Phillips Well, I mean, the idea that there's nothing to lose. Scalia I would give the same advice, bring the suit. Phillips Justice Scalia. Scalia This guy's a possible competitor, sue him. There's nothing to lose. Phillips But there is something to lose. First of all, as I say, the plaintiff, this, you know, there's a reason why you don't see advertisements on television when Science and Kirk says, if you think your patent's been infringed, call us. Why? Because there's not a long line of people who can bring plaintiffs' patent cases. They are expensive to litigate, and the ultimate effect, and you have to get an expert, and at the end, you put your patent in litigation. Scalia If it goes to litigation, yes. But if the alternative for the defendant is either, you know, spend $2 million defending or pay off the $10,000 that the plaintiff demands to go away, hey, that's an easy call. Phillips Well, I mean, I don't know whether that's an easy call for the defendant. It doesn't make the decision for the plaintiff all that easy at the beginning of the process, because as I say, it's both expensive and it puts the validity of the patent at issue. And in most cases, you know, the Federal Circuit a long time ago, or not that long ago, said that the inequitable conduct, that is, challenging what the plaintiff did before the PTO, had become a plague of patent litigation. So plaintiffs who walk into court under those circumstances are not doing it without this. Breyer But the difficulty here, I'm not going to say it from my point of view for a second. Of course, I think that there is no plaintiff defendant necessary difference of who can act badly. Phillips Of course. Breyer All right. And so the question is really, who is likely most to know? And I think probably the district court. But then if you give the power to the district court, there is a problem, of course, that you will abuse it. So I say, well, then go to the Federal Circuit and say they have. You say, well, there is another way of approaching it, and that is have definite standards, which is what you want. And then the difficulty with definite standards is I can't think of a set of definite standards that doesn't do what you don't want to have happen, that it leans one way or the other. I mean, it looks as if, you see, the Federal Circuit's current standards leaned pretty much against the person who was sued. And it looks like the the and so the government comes up, well, we can't do better than this, it's a long list. And nobody has been able to think of some, so then I say, okay, let's try the first approach, which is what we do with the Lanham Act. That's the whole long story. What do you would like to say? I'd like to listen. Phillips Right. And the answer to that is that the standards for inequitable conduct are reasonably well set. They get applied pretty routinely, and they create exceptional case determinations. Litigation misconduct, the standards are pretty well set, pretty well understood, and they give rise to exceptional case determinations and award of attorney's fees. This case is unusual in the sense that all it deals with is that bucket that talks about whether or not you had a substantial basis for putting before the Court this litigation in the first instance. Kagan Mr. Phillips, I realize that you have this argument that this statute was before Rule 11. So the superfluity argument doesn't work. But just as a matter of fact, would your standard give the Court authority to order fees in any case in which it does not have authority by virtue of either Rule 11 or its inherent authority? Phillips Are you asking me that just about the baseless litigation or all of 280? Because clearly inequitable conduct, willful infringement, and certain forms of litigation misconduct, which might create a basis for fees against the lawyer, might not actually operate against the party, where obviously 285 operates against the party. So there's a whole range of behavior that is controlled by 285 that has nothing to do with Rule 11, et cetera. So, yes, I mean, there's clearly some overlap between them, but that overlap shouldn't be shocking, because, again, 285 was enacted in 1952, and Rule 11 didn't come into being a serious force until 1983. Kagan But let me make sure I understand you. Give me an example of a case in which under your standard, 285 could be used to order a payment of fees, but Rule 11 and inherent authority would not allow. Phillips Again, I mean, the clear one, if you're only talking about the baselessness component, I don't know that there is one like that. If you're talking about inequitable conduct, they would all be, because Rule 11 will never reach inequitable conduct involving the Patent and Trademark Office, because it's completely irrelevant to that. So the statutes do have some overlap, but they don't have complete correspondence. But to me, that's the key. Kagan Inequitable conduct to the Trademark Office, but not with respect to the suit itself. Phillips Right. Right. There is patent misconduct. Kagan There's nothing with respect to the suit itself that Rule 11 and inherent authority wouldn't get you anyway. Phillips Well, litigation misconduct is something that may or may not go against the party, depending on which rule it is and how it plays out. So there – and the courts have long recognized that certain forms of vexatious behavior by litigants may lead you to a particular – to determine that something is an exceptional case. So there seem to me clearly there might be. What I'm – what I am conceding is that I can't envision a situation where you have brought what a court has said is objectively baseless litigation in the first instance that might not have been actionable under Rule 11. The question would be, it would be – at this stage, you would go immediately against the party, as opposed to potentially against the lawyer. And to that extent, it obviously provides broader relief, depending on which of the two parties might actually have more resources. Ginsburg What about the inherent authority? Justice Kagan brought this up. Not just Rule 11, but inherent authority when the court finds that the litigation is baseless and brought in bad faith. It seems to me that your standard is the same as what the court could do without any statute. Are there other cases? Phillips Today, today I think that may be true. I don't think that was true in 1946 and then again in 1952. The whole notion of shifting fees to a – to a losing plaintiff was – was all but unprecedented at the time. And the best evidence we have of the circumstances in which Congress wanted to have those fees imposed is to prevent a gross injustice. And it seems to me nothing better suits that test than something that is objectively baseless, as just that one bucket within which 285 operates. The other buckets obviously equally involve situations of gross injustice. Sotomayor So where does the bad faith come in? Phillips I'm sorry? Sotomayor Where does the bad faith come in? Rule 11 doesn't include bad faith. It just – Phillips I mean, we obviously have, because it's in the Federal Circuit's standard, we embrace it. But the reality is, I don't need to win the bad faith argument. If this Court concluded that bad faith shouldn't be an independent factor, that would not bother me, because the district judge already found that this is objectively not baseless. So there ought to be a basis for affirmance on that ground alone. Alternatively, the Court obviously could wait for another case in which to take up that issue. But we don't need to win that in order to prevail in this particular case, and it certainly wouldn't cause me any heartburn if the Court were to – to jettison that part. Sotomayor Would you address the clearing convincing? Phillips Well, I know your argument that it's not in the case. It's not before us. I mean, the rationale of clear and convincing, obviously, is that – is whether you assume that the patent is being implemented in good – being brought in good faith and therefore creates sort of a presumption in favor of the – of infringement and legitimacy, and then clear and convincing evidence is obviously designed to make it harder to get over that hurdle. Again, I'm not here to defend the clear and convincing evidence standard. I read the concurring opinion in the Federal Circuit as well, and, you know, but it seems to me clearly not in this case. It's not subsumed by the question presented, and that's an issue that the Court ought to wait for another day. Hopefully I won't have to defend it at that time. If there are no further questions, Your Honors, I'd urge you to affirm. Thank you. Roberts Thank you, counsel. Mr. Telscher, you have three minutes remaining. Telscher Thank you. What we're all really talking about here is how extreme should the test be for an exceptional case, and that's what this boils down to. Should it be at the extreme of frivolousness or what we believe objectively baseless means the same thing, that's how the district court used it, or should it be something lesser that's practical? The plain meaning of exceptional doesn't mean extreme. As the D.C. Circuit found in Knoxell, it's not a hardly ever rule. So when we look at the plain meaning, it doesn't signal extreme. When we consider the larger objectives of the Patent Act, which this Court has discussed, in numerous cases you look at Pope and Lear, where this Court said there's an important public interest in making sure, quote, worthless patents are not used to restrain trade. Four weeks ago in Medtronic, this Court found that we should have a paramount interest in making sure the bounds of patents are not unreasonably stretched to get royalties. And so when we consider the larger objectives, what we're looking for is a balance. And if you look at this Court's precedent in Martin, where there was no standard, what this Court found is when you look to the larger objectives and you want to encourage good conduct and you want to discourage bad conduct, you set it at reasonable. You don't set it at the extreme of frivolousness, which smart lawyers know how not to do that, how not to get sanctioned under Rule 11. And in the complex world of patent cases, it's not hard to avoid frivolous cases. So setting an extreme standard would defeat the whole purpose of the Act, and it's inconsistent with the language. On the topic of injustice versus gross injustice, I found that very interesting, because certainly exceptional, there's nothing about it that signals gross injustice versus injustice. And to the extent, because I think the question was asked by one of the justices, well, doesn't that signal extreme conduct? I don't know that it does or doesn't, but certainly the plain meaning of the statute doesn't. And so to the extent that gross injustice is used in this Court's opinion, it has to signal something other than the extreme conduct. We could debate whether winning a hard-fought case and spending 2 million is injustice. Certainly, in my view, if you defend a case and spend $2 million, especially one like this where every core element was missing, that's gross injustice. But I don't know what the standard is, justice or injustice, or gross injustice. It's just not extreme. And that's how this Court's opinion needs to be written if we're going to discourage the maintenance of unreasonable cases. And there's not 15 amici briefs in some of the largest technologies and companies in this country before this Court if it weren't the case that there's a problem. These are companies with a self-interest and a strong patent system. They have patents. They sue. And yet they're here telling this Court to not pick an extreme standard. Roberts. Thank you, counsel. The case is submitted.